UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES FASTABEND,
*as next friend of C.F.*,

               Plaintiff,                                 Case No. 1:15-cv-386

v.                                         HON. JANET T. NEFF

MERLE KARBERG and
BARBARA KARBERG,

               Defendants.

_____/

## **OPINION**

Plaintiff filed this diversity action seeking recovery for personal injuries sustained by his minor child, C.F., while she was tubing on a lake at the home of Defendants Merle and Barbara Karberg, husband and wife. Pending before the Court is Defendants' Motion to Dismiss and/or Declaration Regarding Applicable Standard of Care (Dkt 24). Plaintiff has filed a Response (Dkt 25) in opposition, and Defendants have filed a Reply (Dkt 26). Having fully considered the parties' submissions, the Court concludes that oral argument would not assist in the disposition of the issues presented. *See* W.D. Mich. LCivR 7.2(d).

### **I. Facts**

Plaintiff summarizes the facts as follows.[1] On August 8, 2014, C.F., a 16-year-old girl from Schererville, Indiana, was a guest at Defendants' cottage on Dewey Lake in Dowagiac, Michigan.

---

[1] The parties failed to file a Joint Statement of Material Facts as ordered by the Court (Dkt 21). The Court relies on Plaintiff's summary for purposes of this motion only; these facts are not intended as a resolution of any matters in dispute.

C.F. was taken there by Defendants' son and daughter-in-law without her parents' knowledge. Accompanying C.F. were several other minors.  Defendants owned a speedboat, which they were using to tow the kids on inflatable tubes on the lake.  At the time of the incident, Merle Karberg was using his boat to pull two inflatable devices, each with two riders, around the lake.  One of the riders was C.F.

As outlined in Plaintiff's complaint, Merle Karberg began making sharp turns, flinging the riders outside the wake at high speeds.  Near the end of the ride, Karberg again turned the boat and applied the throttle in such a way as to fling the tubes at high speed, this time into a large wave generated by the boat.  Upon striking the wave with her tube, C.F. was ejected with enough force to crush part of her spine.  She sustained severe injuries requiring surgery to fuse her vertebrae together, and subsequent physical therapy and rehabilitation.

## II.  Legal Standards

Defendants move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure Rule 12(b)(6) or for a declaration as a matter of law, pursuant to Rule 57, 22 U.S.C. § 2201, or as otherwise appropriate, that this action is governed by the "reckless misconduct" standard of care.

### A.  Rule 12(b)(6)

Rule 12(b)(6) authorizes the court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted."  In deciding a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations in the complaint as true.  *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014).  However, a court "need not ... accept as true legal conclusions or unwarranted factual

inferences." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).  The complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Newberry v. Silverman*, 789 F.3d 636, 640 (6th Cir. 2015).[2]

"The complaint should give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *German Free State of Bavaria v. Toyobo Co, Ltd.*, 480 F. Supp. 2d 958, 963 (W.D. Mich. 2007); *see also Twombly,* 550 U.S. at 555 (citing FED. R. CIV. P. 8(a)(2)). Accordingly, the "'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Bavaria*, 480 F. Supp. 2d at 963 (quoting *Lillard v. Shelby Cty. Bd. of Educ.,* 76 F. 3d 716, 726 (6th Cir. 1996) (citation and quotations omitted)).  Further, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do …." *Twombly*, 550 U.S. at 555 (citation omitted).

## B.  Declaratory Judgment

Under Rule 57, the Federal Rules of Civil Procedure "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." FED. R. CIV. P. 57.  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations

---

[2]The parties rely on an outdated legal standard for motions to dismiss under Rule 12(b)(6), i.e., "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  *Twombly* and *Iqbal* changed the long-standing rule of *Conley*.  As noted above, a plaintiff must allege "'enough facts to state a claim to relief that is plausible on its face.'"  *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 570).

of any interested party seeking such declaration, whether or not further relief is or could be sought."
28 U.S.C. § 2201.

### III.  Analysis

The dispositive issue before the Court is the standard of care applicable to Plaintiff's claim.
Plaintiff asserts liability against the Karbergs based on a negligence standard of care, alleging that
Defendant Merle Karberg at all times owed Plaintiff a duty of "ordinary care" with respect to
operating a watercraft pulling individuals on inflatable devices (*see* Dkt 1, Compl. ¶ 17).[3]

Plaintiff asserts that Michigan's statutory scheme imposes a negligence standard on the
operation of personal watercraft (Pl. Resp., Dkt 25 at PageID.117-118).  Specifically, MICH. COMP.
LAWS § 324.80157 provides that "[t]he owner of a vessel is liable for any injury occasioned by the
negligent operation of the vessel, whether the negligence consists of a violation of the statutes of this
state, or in the failure to observe such ordinary care in the operation as the rules of the common law
require."  Further, a narrower, but potentially even more relevant statute, MICH. COMP. LAWS
§ 324.80158, makes the owner of a vessel liable for "damage to life or property resulting from a
wake or swell created by the negligent operation or propulsion of the vessel."  Finally, MICH. COMP.
LAWS § 324.80145 requires operators of a vessel to "operate it in a careful and prudent manner and
at such a rate of speed so as not to endanger unreasonably the life or property of any person."

Plaintiff argues that the negligence standard thus applies in this case involving a recreational
watercraft, as reflected by the holdings in court decisions involving watercraft and motor vehicles.
*See*, *e.g.*, *Estate of White v. Beauchamp*, 82 N.W.2d 472 (Mich. 1957) (holding that a negligence

---

[3]Plaintiff alleges that pursuant to MICH. COMP. LAWS § 324.80157, Defendant Barbara
Karberg, as an owner of the vessel at issue, is also liable for its negligent use by her spouse, Merle
Karberg (*see* Compl. ¶ 21).

standard applied to the operation of a motorboat where the plaintiff's decedent drowned after being

thrown from a motorboat when it capsized).

Defendants move for dismissal and/or a declaration that, to the contrary, the reckless

misconduct standard of care applies under the circumstances presented—as the minimum standard

of care for coparticipants in recreational activities pursuant to Michigan common law—under the

holding of *Ritchie-Gamester v. City of Berkley*, 597 N.W.2d 517, 525 (Mich. 1999).  Defendants cite

the Michigan Supreme Court's explanation in adopting this standard:

> [W]e join the majority of jurisdictions and adopt reckless misconduct as the
> minimum standard of care for coparticipants in recreational activities.  We believe
> that this standard most accurately reflects the actual expectations of participants in
> recreational activities.  As will be discussed in more detail below, we believe that
> participants in recreational activities do not expect to sue or be sued for mere
> carelessness.  A recklessness standard also encourages vigorous participation in
> recreational activities, while still providing protection from egregious conduct.
> Finally, this standard lends itself to common-sense application by both judges and
> juries.

*Id*.

Defendants argue that Plaintiff attempts to bypass the clear application of the holding in

*Ritchie-Gamester*, and abrogate this common law standard by relying on the Natural Resources and

Environmental Protection Act (NREPA), Mich. Comp. Laws § 324.101 *et seq*., which does not

statutorily override the common law standard of care articulated by *Ritchie-Gamester*.  Further,

Plaintiff's reliance on other statutes relating to recreational uses, and the Motor Vehicle Code

(MVC), is misplaced because those statutes are wholly inapplicable.

Having considered the arguments presented, the Court concludes that Plaintiff's arguments

are in concert with Michigan law.  Michigan's statutory scheme clearly sets forth a negligence

standard of care with respect to the operation of motorized watercraft, as recognized in various case holdings.  The reasoning of *Ritchie-Gamester* provides no basis to hold otherwise in this case.

A.  Michigan Statutes

Statutory provisions under the NREPA clearly provide that the operator of a watercraft is subject to a negligence standard of care.  MICH. COMP. LAWS § 324.80145 governs "Care in operating vessel; speed; penalty" and provides:

> *A person operating or propelling a vessel upon the waters of this state shall operate it in a careful and prudent manner and at such a rate of speed so as not to endanger unreasonably the life or property of any person.*  A person shall not operate any vessel at a rate of speed greater than will permit him or her, in the exercise of reasonable care, to bring the vessel to a stop within the assured clear distance ahead.  A person shall not operate a vessel in a manner so as to interfere unreasonably with the lawful use by others of any waters.  A person who violates this section is responsible for a state civil infraction and may be ordered to pay a civil fine of not more than $500.00.

(Emphasis added).

MICH. COMP. LAWS § 324.80157, "Liability for negligent operation, vessel owner; consent, presumption," likewise provides:

> *The owner of a vessel is liable for any injury occasioned by the negligent operation of the vessel, whether the negligence consists of a violation of the statutes of this state, or in the failure to observe such ordinary care in the operation as the rules of the common law require.*  The owner is not liable unless the vessel is being used with his or her expressed or implied consent.  It shall be presumed that the vessel is being operated with the knowledge and consent of the owner if it is driven at the time of the injury by his or her son, daughter, spouse, father, mother, brother, sister, or other immediate member of the owner's family.

(Emphasis added).

Finally, as Plaintiff notes, MICH. COMP. LAWS § 324.80158 expressly addresses "Damage to life or property from wake, liability of vessel owner; consent" and states:

> The owner of any vessel operated upon the waters of this state is personally responsible for any damage to life or property resulting from a wake or swell created by the negligent operation or propulsion of the vessel, if the vessel is being operated with his or her consent.

Thus, the operator of a watercraft is subject to a negligence standard of care pursuant to the cited statutes.

Defendants assert that these statutory provisions fall under Part 801 of NREPA, as added by 1995 Public Act 58, a lengthy regulatory boating statute relating to the protection of waters and natural resources, which expressly reserves administration and enforcement to the Michigan Department of Natural Resources (MDNR). Defendants argue that Part 801 does not grant standing to Plaintiff to pursue a private action for violations. *See* MICH. COMP. LAWS § 324.80106 ("[t]he department [MDNR] shall be responsible for administration of this part except as otherwise provided …"). Further, it does not abrogate the common law established in *Ritchie-Gamester*. And it does not supply a legal standard of care of ordinary negligence for civil actions. The Court is not persuaded by Defendants' position.

Defendants cite no direct authority for the argument that Part 801 does not supply a standard of care for boating generally and private civil actions, and to the contrary, court decisions have recognized the provisions under Part 801 as establishing a negligence standard of care for the operation of boats in private civil actions. *See*, *e.g*., *Williams v. Kennedy*, ___ N.W.2d ___, No. 325267, 2016 WL 4097892 (Mich. Ct. App. Aug. 2, 2016) (plaintiff, next friend of her minor daughter, brought a negligence action after a boat struck the minor on a lake, causing partial amputation of her right foot) (citing MICH. COMP. LAWS § 324.80157, "which holds watercraft owners liable for damages resulting from the negligent operation of their vessels"); *Farm Bureau Mut. Ins. Co. v. Bowers*, No. 311811, 2013 WL 3455499, at *4 (Mich. Ct. App. July 9, 2013) ("As

the operator of the boat at the time of the accident, Julie bore a legal responsibility to operate the watercraft in a reasonable manner" (citing MICH. COMP. LAWS § 324.80145)), *rev'd on other grds*, 839 N.W.2d 492 (Mich. Nov. 27, 2013); *Georgian v. Lemaster*, No. 262722, 2005 WL 2861599, at *2 (Mich. Ct. App. Nov. 1, 2005) (claim under the "watercraft owner's liability statute," MICH. COMP. LAWS § 324.80157); *Sinacola v. Twp. of Leland*, Nos. 248068, 252107, 2004 WL 2624852, at *1, 3 (Mich. Ct. App. Nov. 18, 2004) (same); *Binno v. Binno*, No. 291437, 2010 WL 2384966, at *3, 8 n.7 (Mich. Ct. App. June 15, 2010) (considering whether the defendant owed a statutory duty of care as the operator of a vessel under Part 801, MICH. COMP. LAWS §§ 324.80103, 324.80144, 324.80145 and 324.80157, and noting that it was not clear that the reckless misconduct standard of *Ritchie-Gamester* should be applied under the facts of the case), *aff'd in part & rev'd in part*, 796 N.W.2d 49 (Mich. Apr. 22, 2011).

    *See also Youngberg v. McKeough*, 534 F. App'x 471 (6th Cir. 2013) (passenger on personal watercraft that collided with wake boat sued pilot of boat, his parents, watercraft driver's father, and personal representative of watercraft driver's estate, for alleged negligence in causing collision in which boat ran over back of watercraft, killing driver and severing passenger's leg below her knee) (citing MICH. COMP. LAWS § 324.80157); *Liberty Mut. Ins. Co. v. Markel Am. Ins. Co.*, No. 1:06-cv-812, 2007 WL 2463348, at *5 (W.D. Mich. Aug. 30, 2007) (insurance dispute) ("Michigan statutory law imposes upon the owner of personal watercraft liability for injuries occasioned by the negligent operation of the watercraft, if 'the personal watercraft is being used with his or her express or implied consent'" (citing MICH. COMP. LAWS § 324.80207)).

The general boating statutes appear to have been long applicable to private civil actions involving watercraft,[4] and NREPA's boating safety standards have been and are properly applied accordingly.[5]

### B.  *Ritchie-Gamester*

In *Ritchie-Gamester*, the court reviewed the current state of Michigan law governing recreational activity, as well as the law in other jurisdictions. 597 N.W.2d at 519-523.  In adopting the "reckless misconduct" standard, the court considered at length the nature of recreational activities.  *Id.* at 523-25.  "A person who engages in a recreational activity is temporarily adopting a set of rules that define that particular pastime or sport.  In many instances, the person is also suspending the rules that normally govern everyday life."  *Id.* at 523.  The court observed that "[t]here are myriad ways to describe the legal effect of voluntarily participating in a recreational activity," but "[n]o matter what terms are used, the basic premise is the same:  When people engage in a recreational activity, they have voluntarily subjected themselves to certain risks inherent in that

---

[4]*See Torrez v. Willett*, 115 N.W.2d 393, 394 (Mich. 1962) (negligence action for injuries sustained by minor who was struck while swimming by outboard motor boat owned by one defendant and operated by the other defendant, noting the defendant boat operator "had a duty to operate the boat in a careful and prudent manner, as provided in C.L. 1948, § 752.401"); *Britten v. Updyke*, 98 N.W.2d 660, 662, 664 (Mich. 1959) (action against operator of motorboat for death of passenger whose head struck beams of low bridge as motorboat was operated under bridge, based on the boating statues, noting that the charge to the jury "would have been improved by reference to the statutes cited by appellant and to the fact that violation of them was negligence *per se*").

[5]Even if NREPA's standards did not apply, in light of the Court's rejection of the *Ritchie-Gamester* reckless misconduct standard herein, the result would be the same.  "Given the absence of any common-law or statutory rule imposing a higher standard, the applicable standard is ordinary negligence."  *Bertin v. Mann*, ___ N.W.2d ___, No. 328885, 2016 WL 7443241, slip op. at 12-13 (Mich. Ct. App. Dec. 27, 2016) (citing *Sherry v. E. Suburban Football League*, 807 N.W.2d 859, 862 (Mich. Ct. App. 2011) ("reasoning, after it determined that a reckless misconduct standard did not apply under the facts of that case, that an ordinary negligence standard applied") (footnote omitted)).

activity.  When one of those risks results in injury, the participant has no ground for complaint." *Id.* at 523-24.

As Defendants observe, following the Michigan Supreme Court's adoption of the reckless misconduct standard in *Ritchie-Gamester*, the courts have consistently applied the standard to numerous recreational activities over the past seventeen years:  *see, e.g.*, *Behar v. Fox*, 642 N.W.2d 426 (Mich. Ct. App. 2001) (soccer); *Smith v. Sattler*, No. 305790, 2012 WL 4214764 (Mich. Ct. App. Sept. 20, 2012) (tobogganing); *Blakney v. Dery*, No. 296017, 2011 WL 682898 (Mich. Ct. App. Feb. 24, 2011) (golf); *Chryczyk v. Juhas*, No. 294348, 2011 WL 254518 (Mich. Ct. App. Jan. 22, 2011) (tennis); *Hlywa v. Liberty Park of Am.*, No. 291759, 2010 WL 2793562 (Mich. Ct. App. July, 15, 2010) (soccer); *Kline v. Skatemore, Inc.*, No. 288141, 2009 WL 4985026 (Mich. Ct. App. Dec. 22, 2009) (roller skating); *Esshaki v. Millman*, No. 283297, 2009 WL 692451 (Mich. Ct. App. Mar. 17, 2009) (soccer); *Willford v. Thorington*, No. 287909, 2009 WL 4342520 (Mich. Ct. App. Dec. 1, 2009) (soccer); *Leggert v. Rewekant*, No. 233213, 2002 WL 31029653 (Mich. Ct. App. Sept. 10, 2002) (softball); *Zielinski v. Mandeville*, No. 221842, 2001 WL 636874 (Mich. Ct. App. May 25, 2001) (hockey); *Walton v. Brenner*, No. 212794, 2000 WL 33419368 (Mich. Ct. App. May 26, 2000) (golf).

Defendants assert that against this backdrop, only a few courts have declined to extend *Ritchie-Gamester* to the facts before them, for example, in the very limited contexts of off-road vehicles, which are subject to Michigan's Motor Vehicle Code (MVC), and owners of recreational activity facilities, sports coaches, and sports leagues (Defs. Br., Dkt 24 at PageID.53, nn. 1-2, citing cases).

Plaintiff argues that *Ritchie-Gamester* does not, and cannot, apply to recreational activities involving motorized vehicles, i.e., a motorized boat.  Plaintiff relies in particular on two cases finding exceptions to *Ritchie-Gamester*, also cited by Defendants, which involved vehicles subject to the MVC.  Plaintiff notes that in *Allred v. Broekhuis*, 519 F. Supp. 2d 693, 697 (W.D. Mich. 2007), a case involving injury from an ATV (all-terrain vehicle) collision, the court found no language in *Ritchie-Gamester* to suggest that the Michigan Supreme Court ever intended the recreational activities doctrine to apply to activities involving motorized vehicles.  Second, in *VanGuilder v. Collier*, 650 N.W.2d 340 (Mich. Ct. App. 2001), a case relied on by *Allred*, the Michigan Court of Appeals likewise considered whether *Ritchie-Gamester's* recklessness standard applied to activities involving motorized vehicles.  The court concluded: "The operation of motor vehicles, including ORVs, is not governed by the 'rules of the game,' but by the law." *Van Guilder*, 650 N.W.2d at 342.

The Court finds the MVC cases cited by Plaintiff instructive.  In *Allred*, the plaintiff/driver of an ATV was injured in a collision with another ATV being driven in the opposite direction, which crossed to the plaintiff's side on a state-owned trail for off-road vehicles (ORVs) and struck the plaintiff's ATV.  *Allred*, 519 F. Supp. 2d at 694-95.  Relying on the Michigan Court of Appeals' decision in *VanGuilder*, the court concluded that the operation of ORVs is governed by the ordinary negligence standard of civil liability found in the Michigan MVC.  *Id.* at 698.

In *VanGuilder*, the Plaintiff likewise sustained injuries in an accident involving two ORVs:

> In the course of attempting to travel up a hill, plaintiff's ORV began slowing and experiencing difficulty as it neared the top of the hill.  Defendant, who was riding his ORV directly behind plaintiff, gave his ORV some gas and "nudged" the rear of plaintiff's ORV in an apparent attempt to push plaintiff to the top of the hill.  However, instead, plaintiff's ORV flipped over backwards, throwing plaintiff onto the ground where he landed on his back.  Defendant, who was "going at a pretty

11

good speed," proceeded to run over plaintiff.  As a consequence of the incident, plaintiff allegedly sustained injuries, including a broken neck.

*VanGuilder*, 650 N.W.2d at 341.

> The court found the case distinguishable from *Ritchie-Gamester*:
>
> In that case, the Court primarily focused its analysis on injuries sustained during the course of recreational activities that typically or foreseeably involve physical contact between coparticipants.  To the contrary, a person operating a motorized recreation vehicle does not reasonably expect or anticipate the risk of physical contact, nor is such risk an obvious or necessary danger inherent to its normal operation.  The *Ritchie-Gamester* Court did not contemplate injuries that occur as a result of physical contact between two such vehicles.

*Id.* at 341-42.  The Court found the distinction dispositive, and declined to adopt the defendant's speculative conclusion that the Michigan Supreme Court intended that a recklessness standard of care apply with regard to the operation of motorized recreation vehicles "*simply because they are usually used for recreational purposes*."  *Id.* at 342 (emphasis added).  "The operation of motor vehicles, including ORVs, is not governed by the 'rules of the game,' but by the law."  *Id.*

Similar reasoning and conclusions apply in this case.  Plaintiff was engaging in a recreational activity—the water sport of tubing.  However, Defendant Karberg's liability is premised not on his actions as a "tuber," but instead as the operator of a motorized watercraft.  The Court finds no basis to conclude under the reasoning in *Ritchie-Gamester*, that a recklessness standard governs the operation of a motorized watercraft *merely because it was being used for a recreational activity* other than general boating.  The operation of a watercraft is governed by the law, not the "rules of the game."  *See VanGuilder*, 650 N.W.2d at 342.

The Michigan Supreme Court's adoption of the reckless misconduct standard in *Ritchie-Gamester* was based on "the everyday reality of participation in recreational activities," in which participants "temporarily adopt[] a set of rules that define that particular pastime or sport" and

"suspend[] the rules that normally govern everyday life." *Ritchie-Gamester*, 597 N.W.2d at 523. The court observed that "'[t]he heightened recklessness standard recognizes a commonsense distinction between excessively harmful conduct and the more routine rough-and-tumble of sports that should occur freely on the playing fields and should not be second-guessed in courtrooms.'" *Id.* (citation omitted). The legal effect of voluntarily participating in such activity can be described in various ways: e.g., stepping onto the field is "'consent to the inherent risks of the activity'"; "a participant's knowledge of the rules of a game may be described as 'notice' sufficient to discharge the other participants' duty of care"; "participants' mutual agreement to play a game may be described as an 'implied contract' between all the participants"; or "a voluntary participant could be described as 'assuming the risks' inherent in the sport." *Id.* at 523-24 (citation omitted).

Such conditions do not exist in the circumstances presented in this case. Here, C.F. was not merely subject to the actions of coparticipants on the playing field and the "'rough-and-tumble of sports.'" *Ritchie-Gamester*, 597 N.W.2d at 523 (citation omitted). There are no prescribed "rules of the game" for water tubing. Liability arises not from C.F.'s passive role as a coparticipant or the inadvertent violation of a contest rule, but from an activity that the Michigan Legislature has comprehensively governed by specific safety statutes. The Court finds no basis to carve out an exception to those safety statutes under the reasoning of *Ritchie-Gamester*.

As the Michigan Supreme Court observed in adopting the reckless misconduct standard for recreational activities: "A recklessness standard [] encourages vigorous participation in recreational activities, while still providing protection from egregious conduct. … [T]his standard lends itself to common-sense application by both judges and juries." *Ritchie-Gamester*, 597 N.W.2d at 525 (footnote omitted). In so stating, the court noted that the precise scope of the rule would best be

developed on a case-by-case basis, so that the courts might carefully consider the application of the recklessness standard in various factual contexts. *Id.* at n.9. This Court has done so and determines that the facts presented require the application of the standard applicable to watercraft and boating in general, not the standard for coparticipants in recreational activities and sports.

It is noteworthy that the Michigan Court of Appeals recently reached a similar result in a case of first impression arising from an accident involving a golf cart driven by a defendant, which occurred while the plaintiff and the defendant were golfing together. *Bertin v. Mann*, ___ N.W.2d ___, No. 328885, 2016 WL 7443241 (Mich. Ct. App. Dec. 27, 2016).[6] Although the parties' accounts of the accident differed, it was undisputed that the parties were golfing together and that the defendant struck the plaintiff with the golf cart, knocking the plaintiff to the ground. *Id.*, slip op. at 1-2. The parties disputed the standard of care during trial. The defendant asserted that, under *Ritchie-Gamester*, "reckless misconduct" was the applicable standard of care because the parties were coparticipants in a recreational activity when the incident occurred. *Id.* at 2. The trial court ultimately agreed that a "reckless misconduct" standard applied in the case "because 'it is involved with the game of golf.'" *Id.* at 3.

The court of appeals reversed. The court observed that the parties were, without dispute, coparticipants in a recreational activity, and "[u]nder the broad language in *Ritchie–Gamester*, … 'coparticipants in recreational activities owe each other a duty not to act recklessly.'" *Bertin*, 2016 WL 7443241, slip op. at 3 (quoting *Ritchie-Gamester*, 597 N.W.2d at 518). "However, as plaintiff emphasizes, *Ritchie–Gamester* does not establish that *any* coparticipant conduct that causes injury during a recreational activity must meet the reckless misconduct standard." *Id.* (citing

---

[6] *Bertin* was decided after briefing in the instant case and has not been cited by either party.

14

*Ritchie-Gamester*, 597 N.W.2d at 525 n.9) (emphasis in original).  Although *Ritchie-Gamester's* reckless misconduct standard was applicable to the sport of golf, the parties disputed whether the use of a golf cart fell within the scope of activities involved in the game of golf such that it would be subject to the reckless misconduct standard.  *Id.* at 5.

The *Bertin* Court rejected the plaintiff's argument that the ordinary negligence standard applied because a golf cart, like the ORVs at issue in *Van Guilder*, is a motor vehicle and, therefore, subject to the civil liability provisions under Michigan's MVC.  *Bertin*, 2016 WL 7443241, slip op. at 5-7.  However, the court agreed with the plaintiff that the use of a golf cart, and the risks presented by a golf cart, were not "inherent" risks of golf, and thus did not fall within the rule of *Ritchie-Gamester*.  *Id.* at 8-12.  The court acknowledged that numerous golf-related cases in Michigan and other jurisdictions have applied the reckless misconduct standard to a participant who was injured by a golf ball or a club, but stated that it had "not found a single Michigan case, or a case in any other jurisdiction, where the driver of an injury-causing golf cart during a game of golf was held to any standard other than ordinary negligence."  *Id.* at 3.  After reviewing the reasoning in *Ritchie-Gamester*, and the definition of "inherent risk," the court considered at length the history and evolution of the game of golf and the rules, with respect to the use of golf bags, caddies, carts that were pulled by hand, and eventually motorized carts.  *Id.* at 4-5, 7-12.  The court concluded:

> Therefore, although the language in *Ritchie-Gamester* may superficially support a decision in favor of defendant, a thorough reading of that opinion, along with an examination of relevant caselaw, the rules of the game of golf, and secondary sources, compels us to conclude that golf-cart injuries are not a risk inherent in the game of golf, and that the trial court erred when it ruled that a reckless misconduct standard, instead of an ordinary negligence standard, applies in this case.

*Id.* at 4.

As in *Bertin*, this case can be distinguished from cases involving injury from the routine risks of certain sports and recreational activities.  The Court cannot conclude that *Ritchie-Gamester* provides an exception to the ordinary negligence standard of care generally applicable to the operation of a motorized boat under Michigan law, merely because tubing is involved.  Accordingly, the reckless misconduct standard is inapplicable to Defendant Merle Karberg's actions as the boat operator.

## IV.  Conclusion

The Court concludes that under Michigan law, the ordinary negligence standard of care governing the operation of a motorized boat applies to Plaintiff's claim.  Defendants' Motion to dismiss this case and/or apply a reckless misconduct standard to the conduct at issue is properly denied.  An Order will enter consistent with this Opinion.


Dated: February 8, 2017                       /s/ Janet T. Neff
                                            JANET T. NEFF
                                            United States District Judge

16